**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Estate of Donald McNeely,**

**Plaintiff,**

**v.**

**The United States of America,**

**Defendant.**

**Civil No. 12-CV-1973 (SRN/JJK)**

**MEMORANDUM OPINION AND ORDER**

---

Trevor R. Walsten and Danielle K. Nellis, Walsten & Te Slaa, P.A., 2000 Wells Fargo Plaza, 7900 Xerxes Avenue South, Bloomington, Minnesota 55431, for Plaintiff

Gregory E. Van Hoey, United States Department of Justice, Tax Division, PO Box 7238, Washington, DC 20044, for Defendant

---

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 16] and Defendant's Motion for Summary Judgment [Doc. No. 20]. For the reasons set forth herein, Plaintiff's motion is denied and Defendant's motion is granted.

## I. BACKGROUND

Plaintiff, the Estate of Donald McNeely (the "Estate"), filed this action seeking the refund of a portion of an estate tax payment made after the death of the decedent, Donald McNeely. At the time of his March 2009 death, McNeely was the sole shareholder of two closely-held companies. (Compl. ¶ 6 [Doc. No. 1].)

Because estate tax returns are to be filed within nine months of the decedent's death, 26 U.S.C. § 6075(a), on December 8, 2009, the Estate filed IRS Form 4768, requesting an extension of time until June 9, 2010 in which to file the Estate's federal tax return. (Def.'s Admissions ¶¶ 3-4, Ex. 18 to Walsten Aff. [Doc. No. 18]; Form 4768, Ex. 2 to Walsten Aff. [Doc. No. 18].)[1] A cover letter and an estimated payment of $2,494,088 accompanied the extension request. (Letter of 12/8/09 at 1, Ex. 4 to Walsten Aff.) Form 4768 requires an estate to estimate its federal estate liability when the estate seeks a filing extension. (Form 4768 at ¶ 5, Ex. 2 to Walsten Aff.) In the December 8, 2009 cover letter, the Estate also announced its intention to seek deferred estate tax treatment pursuant to 26 U.S.C. § 6166. Section 6166 of the Tax Code provides an exception to the general rule that estate tax payments are due within nine months of the decedent's death. 26 U.S.C. § 6166; United States v. Askegard, 291 F. Supp.2d 971, 974 (D. Minn. 2003) (citing 26 U.S.C. §§ 2001, 6075(a), 6161(a)). Pursuant to § 6166, where the decedent's interest in a closely-held business exceeds 35 percent of the adjusted gross estate, "the executor may elect to pay part or all of the tax imposed by section 2001 in 2 or more (but not exceeding 10) equal installments." 26 U.S.C. § 6166(a)(1). If the estate elects to make deferred installment payments, the first of those payments becomes due five years after the date on which the federal estate tax would otherwise be due. Id. § 6166(a)(3). Interest continues to accrue annually, however, even during the deferment period. "The

[1] All references to the Affidavit of Trevor Walsten are found at Doc. No. 18 in the docket of this case.

purpose of section 6166 is to prevent the forced liquidation of closely held businesses because substantial estate taxes must be paid." Estate of Bell v. Comm'r, 928 F.2d 901, 902 (9th Cir. 1991) (citations omitted); see also Askegard, 291 F. Supp. 2d at 974, n.1. (citing Lake Shore Nat'l Bank v. Coyle, 419 F.2d 958, 962 (7th Cir. 1969)).

In the Estate's December 8, 2009 letter, it also indicated that the enclosed $2,494,088 payment was intended to satisfy the amount of tax on the non-deferred portion of the federal estate tax, if the IRS agreed to deferred tax treatment for the Estate. (Letter of 12/8/09 at 2, Ex. 4 to Walsten Aff.) The IRS granted the Estate's request for a six-month extension in which to file its estate tax return. (Def.'s Admissions ¶ 4, Ex. 18 to Walsten Aff.)

The IRS provided notice to the Estate on February 18, 2010 that it had received the Estate's Form 4768. (Form 4768, Ex. 2 to Van Hoey Decl. [Doc. No. 23].)[2] In addition, the IRS indicated that "[a] Section 6166 election cannot be requested by using the Form 4768. The 6166 election must be requested with the timely filing of the Form 706." (Id. at IDP3.)

On June 9, 2010, the Estate submitted its estate tax return, Form 706. (Form 706, Ex. 5 to Walsten Aff.; Letter of 6/8/10, Ex. 6 to Walsten Aff.) As reflected in Form 706 and in the Estate's letter of June 8, 2010, the Estate valued its gross assets at $230,900.899. (Id.) Because Mr. McNeely's interest in his closely-held businesses

---

[2] All references to the Declaration of Gregory E. Van Hoey are found at Doc. No. 23 in the docket of this case.

exceeded 35 percent of the adjusted gross estate, the Estate sought to pay estate tax on a deferred basis, pursuant to § 6166. (Id.)

In addition, based on the Estate's revised calculations in Form 706, the Estate determined that the correct tax on the non-deferred portion of the federal estate tax – assuming that the IRS granted the § 6166 request – was $512,223. (Id.) Because it had previously estimated and paid $2,492,088 in federal estate tax, the Estate requested a refund of $1,979,865. (Letter of 6/8/10 at 2, Ex. 6 to Walsten Aff.) The Estate further noted that this would "leav[e] a balance of $8,613,655 on the deferred portion of the federal estate tax." (Id.) In the event that the IRS denied the Estate's § 6166 deferred payment election, the Estate requested an extension of time in which to pay the portion that would have been deferred under § 6166. (Id. at 3.)

On August 2, 2010, the IRS responded, acknowledging that the Estate's § 6166 request was pending. (Letter of 8/2/10 at 1, Ex. 7 to Walsten Aff.) Based on the Estate's tax return, the IRS assessed a net federal estate tax of $9,125,878, of which $512,226.41 was ineligible for § 6166 installment payments, again assuming that the IRS granted the Estate's 6166 request. (Id.) Under this scenario, the IRS calculated a total tax of $8,613,651.59 that qualified for payment in installments. (Id.) On this amount, the Estate would be required to make annual installment payments of $861,365.16, plus

interest, beginning on December 9, 2014. (Id.) The Estate's first payment of interest on the deferred portion of estate taxes would be due on December 9, 2010. (Id.)[3]

Also in Defendant's August 2, 2010 letter, the IRS denied the Estate's request for a refund, explaining:

> Our records show that you currently have an overpayment of $1,979,861.59. [26 U.S.C.] § 6403 requires that the overpayment be credited against the unpaid installments. Your installments are or will be due 12/09/2014 through 12/19/2023, therefore this overpayment will be used beginning 12/09/2014 against the unpaid installments due. [Section] 6403 also regulates that no refund can be allowed until the total payments exceed the tax due.

(Id.)

The Estate objected to the IRS's denial of a refund. (Letter of 9/1/10 at 1, Ex. 8 to Walsten Aff.) The Estate noted that in its December 8, 2009 letter to the IRS, it had indicated that the estimated tax payment was to be applied to the "non-deferred portion of the federal estate tax." (Id. at 2.) Further, the Estate argued that § 6403 – on which the IRS based its decision to deny the refund – was inapplicable to the non-deferred portion of the federal estate tax because it applies only to overpayments of taxes payable in installments. (Id.) As the Estate noted, the IRS's August 2, 2010 letter indicated that the Estate's § 6166 deferred payment request was still pending. (Id.)

The IRS's Appeals Office acknowledged receipt of the Estate's appeal of the denial of refund. (Letter of 9/16/10, Ex. 9 to Walsten Aff.; Letter of 1/21/11, Ex. 10 to

---

[3] The IRS later formally approved the Estate's federal estate tax return, including the requested § 6166 deferral, on June 29, 2011. (Letter of 6/29/11, Ex. 11 to Walsten Aff., Def.'s Admissions ¶ 12, Ex. 18 to Walsten Aff.)

Walsten Aff.) Plaintiff's counsel transcribed two voicemail messages left for him by IRS Appeals Officer Stan Labuz in February and March 2012. (Transcriptions, Exs. 14-15 to Walsten Aff.) In the February 9, 2012 transcript, the Appeals Officer indicated that he was sympathetic to the Estate's argument for a refund. (Transcription of 2/9/12, Ex. 14 to Walsten Aff.) The March 19, 2012 transcription, which reflects the second voicemail message left by Mr. Labuz, includes the following:

> I have good news and bad news I guess. The good news is I agree with you 100% and I did propose to my Manager and recommend that the refund be issued. But I guess the bad news is, after consulting with the national office service center, my manager is, I guess, overruling my proposed recommendation which I'm not surprised. I was kind of certain he wouldn't go against counsel's advisory there.
>
> . . . I also contacted the national office to get their input and since the very first time I spoke with them they said it didn't make any difference if a payment was made with the return and it was designated as a non-deferred payment.

(Transcription of 3/19/12, Ex. 15 to Walsten Aff.)

In an April 30, 2012 final determination letter from IRS Appeals Team Manager John Schooler to the Estate, Mr. Schooler stated, ". . .we have determined that under I.R.C. sections 6402 and 6403, any overpayment must be applied to reduce the balance of remaining estate tax due and cannot be refunded." (Letter of 4/30/12 at 2, Ex. 16 to Walsten Aff.) Mr. Schooler advised the Estate that it could appeal the IRS's determination by filing a suit in the United States District Court or the United States

Court of Federal Claims. (Id.)[4]

Plaintiff filed the instant lawsuit on August 13, 2012, asserting that the Estate made an overpayment of its federal estate tax and, under 26 U.S.C. §§ 6402 and 7422(j), is entitled to a refund of $1,979,861.59. (Compl. ¶ 26 [Doc. No. 1].) In the Estate's summary judgment motion, it argues that its designation of the estimated payment as payment for the non-deferred portion of its estate tax liability, and the IRS's acceptance of that payment, binds Defendant to that designation and requires the IRS to refund the excess amount. (Pl.'s Mem. Supp. Mot. for Summ. J. at 9-14 [Doc. No. 17].) In addition, Plaintiff contends that 26 U.S.C. §6403 does not apply to the overpayment of the non-deferred portion of its federal estate tax liability, because the Estate paid prior to making the § 6166 election. (Id. at 15-19.) Finally, the Estate maintains that 26 U.S.C. § 6402 requires a refund of the overpayment, rather than a credit, in recognition of the Estate's special rights to defer payment under § 6166. (Id. at 20-28.) Arguing that no genuine issues of material fact are in dispute, Plaintiff contends that it is entitled to summary judgment.

In the IRS's cross motion for summary judgment, and in its opposition to Plaintiff's motion, the IRS contends that the Estate is not entitled to a tax refund because there was no overpayment of the estate tax. (Def.'s Mem. Supp. Mot. for Summ. J. at 9 [Doc. No. 22].) The IRS argues that Plaintiff's estimated payment did not create an

---

[4] Without waiving its appeal of the refund issue, the Estate has timely submitted interest payments from 2010 through 2013. (Exs. 12, 13, 17, 19 to Walsten Aff.)

overpayment, and even if it did, the IRS properly exercised its discretion under § 6402 to credit rather than to refund the overpayment. (Id. at 9-13; 14-18.)

## II. DISCUSSION

### A. Standard of Review

The standard of review applicable to summary judgment requires the Court to consider the evidence found in the record, as summary judgment is proper if there are no disputed issues of material fact. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### B. Jurisdiction

As a jurisdictional matter, the "[f]ull payment of a tax assessment is a prerequisite

to suit in federal district court." Kaffenberger v. United States, 314 F.3d 944, 958 (8th Cir. 2003) (citing 28 U.S.C. § 1346(a)(1); Flora v. United States, 357 U.S. 63 (1958), on rehearing, 362 U.S. 145 (1960)). Thus, a refund suit "is a postdeprivation remedy, available only if the taxpayer has paid the Government in full." United States v. Williams, 514 U.S. 527, 538 (1995) (citing Flora, 362 U.S. at 145)). In 1998, the Tax Code was amended so that federal courts were deemed to have jurisdiction over estate taxpayers that had elected to make installment payments under 26 U.S.C. § 6166, even though they had not satisfied the full amount of tax liability. 26 U.S.C. § 7422(j). The parties do not dispute that this Court has jurisdiction over Plaintiff's claims (Def.'s Admissions ¶ 2, Ex. 18 to Walsten Aff.), with which the Court concurs, pursuant to 28 U.S.C. § 1346(a)(1); 26 U.S.C. §§ 7422(j).

**C. Overpayment**

Under 26 U.S.C. § 6402, the IRS has discretion to credit an overpayment of tax against a taxpayer's outstanding liability:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.

However, that provision is qualified by the following section, § 6403, which provides:

> In the case of a tax payable in installments, if the taxpayer has paid as an installment of the tax more than the amount determined to be the correct

> amount of such installment, the overpayment shall be credited against the unpaid installments, if any. If the amount already paid, whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax, the overpayment shall be credited or refunded as provided in section 6402.

26 U.S.C. § 6403. Courts have held that § 6403 applies to § 6166 estate tax deferred installment payments. Estate of Shapiro v. Comm'r, 111 F.3d 1010, 1015 (2d Cir. 1997); Estate of Bell, 928 F.2d at 903.

In the cross motions for summary judgment before this Court, the parties dispute whether there has been an "overpayment." Plaintiff argues that there has been an overpayment, entitling the Estate to a refund. Plaintiff points to the use of the term "overpayment" in the IRS's August 2, 2010 letter, arguing that it constitutes an admission on the part of the IRS that a portion of the tax that Plaintiff previously paid is, in fact, an overpayment. (Pl.'s Mem. Supp. Mot. for Summ. J. at 20 [Doc. No. 17]) (citing Letter of 8/2/10, Ex. 7 to Walsten Aff.) While the IRS's letter uses the term "overpayment," the IRS denies that the Estate made an overpayment in its filings in this action. (Compl. & Answer ¶¶ 26, 30, 33 [Doc. Nos. 1 & 7].) Regardless of how an IRS employee may have characterized the estimated payment, tax refund suits are *de novo* proceedings, see, e.g., Bartman v. Comm'r, 446 F.3d 785, 787 (8th Cir. 2006), and it is for the Court to apply the law to the facts in the record.

Defendant contends that there has been no overpayment, because the Estate's entire tax liability has not been satisfied. The IRS maintains that an "overpayment cannot exist unless and until the total tax liability has been paid." (Def.'s Mem. Supp. Mot. for

Summm. J. at 11 [Doc. No. 22].) There is no dispute that the Estate still has outstanding tax liability against the overall estate tax assessment of $9,125,878. (See Def.'s Admissions ¶ 10, Ex. 18 to Walsten Aff.; Letter of 6/8/10 at 2, Ex. 6 to Walsten Aff.) The Court finds it unnecessary to resolve the question of whether an overpayment was made because assuming that Plaintiff's December 8, 2009 payment was an overpayment, both §§ 6402 and 6403 give the IRS the authority to credit any such overpayment. At the time that Plaintiff made its estimated tax payment in December 2009, it announced its intention to seek § 6166 deferral treatment. (Letter of 12/8/09, Ex. 4 to Walsten Aff.) However, the Estate could not make such an election until it filed the corresponding § 6166 paperwork, including Form 706. (IRS Copy of Form 4768 at IDP3, IDP5, Ex. 2 to Van Hoey Decl.) Based on these facts, the Court finds that § 6402 – the more general of the two statutes – is the operative statute for purposes of determining the IRS's authority to make credits or refunds here because Plaintiff had not been formally approved as a § 6166 deferred taxpayer at the time it made its payment.

Section 6402 and its related regulations demonstrate that Congress has granted the IRS discretionary authority to apply overpayments to any tax liability. Section 6402 provides that the IRS "may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the taxpayer." 26 U.S.C. § 6402; see also Northern States Power Co. v. United States, 73 F.3d 764, 766-67 (8th Cir. 1996) (finding that under § 6402 the IRS has the discretion to credit overpayments to any outstanding tax liabilities); Acker v. United States, 519 F.

Supp. 178, 182 (N.D. Ohio 1981) (observing that pursuant to § 6402, "the government may credit tax overpayments to subsequent years unilaterally. . . ."). The Treasury Department's regulations mirror the language of § 6402, granting the IRS and its officials the power to credit any overpayment against "any outstanding liability for any tax." 26 C.F.R. § 301.6402-1 (emphasis added); accord id. §§ 301.6402-3(a)(6), 301.6402-4. While § 6402 also requires the IRS to refund any "balance" to the taxpayer, at the time the Estate made its estimated payment in this case, its net tax liability was $9,125,878. (Compl. & Answer ¶ 12 [Doc. No. 7].) Since Plaintiff overpaid $1,979,861.59 against its $9,125,878 net tax liability (see Letter of 8/2/10 at 1, Ex. 7 to Walsten Aff.), there was no balance to refund.

Moreover, even if § 6403 were determined to be the applicable statute, the result would be the same. As noted, that statute provides that overpayments of taxes payable in installments such as estate taxes under § 6166, "shall be credited against the unpaid installments, if any." 26 U.S.C. § 6403. If the amount of the overpayment exceeds the full amount of the tax due – whether on the basis of installments or otherwise – the IRS may either credit or refund the overpayment, as provided in § 6402. Id.

Plaintiff points to three decisions from other district courts in support of its position that the IRS improperly exercised its discretion to credit the overpayment: Gettysburg Nat'l Bank v. United States, No. 1:CV-90-1607, 1992 WL 472022 (M.D. Pa. July 17, 1992); Eichheim v. United States, No. 86-M-1872, 1988 WL 123832 (D. Colo. Mar. 28, 1988); Snyder v. United States, 630 F. Supp. 182 (D. Md. 1986). (Pl.'s Mem.

Supp. Mot. for Summ. J. at 16 [Doc. No. 17].) In these cases, the taxpayers all elected to defer their estate tax payments under § 6166. All three estate taxpayers made overpayments based on IRS valuation errors – not the taxpayers' erroneous calculations – and were denied refunds. See Estate of Shapiro v. Comm'r, 111 F.3d at 1015 (discussing Gettysburg, Eichheim, and Snyder). In each case, the respective courts granted a refund, rather than a credit to the taxpayers' future installments. Gettysburg, 1992 WL 472022, at *12; Eichheim, 1988 WL 123832, at *4; Snyder, 630 F. Supp. at 185. Finding that § 6166 creates "a very valuable right for taxpayers," the court in Snyder explained that "the proper application of section 6402 is to credit overpayments against taxes then due – but not to liabilities which by law come due in the future." 630 F. Supp. at 184-85.

However, in Estate of Bell, 928 F.2d at 904, the Ninth Circuit Court of Appeals reached a different conclusion regarding the crediting or refunding of estate tax overpayments. In that case, the court held the overpayment of § 6166 installments is governed by § 6403, which permits the IRS to credit overpayments against unpaid installments. Id. at 903. The court found that § 6403 was "clear and unambiguous" and observed that § 6166 contains no specific language to negate the effect of § 6403 in the case of overpayments. Id. The Ninth Circuit noted that this lack of an irreconcilable conflict "indicate[d] that Congress did not intend to negate the clear mandate of section 6403 when an overpayment is made on a section 6166 installment." Id. (citation omitted). Moreover, the court found that applying § 6403 to credit an overpayment was "not clearly at odds with the purpose of section 6166," which is to prevent the forced liquidation of

closely held businesses in order to meet estate tax obligations. Id. at 902-04.

In Estate of Shapiro, 111 F.3d at 1015-16, the Second Circuit Court of Appeals attempted to reconcile the holdings of these cases:

> These district court cases could, in fact, be reconciled with Estate of Bell by drawing out the distinction that may be implicit in all of these holdings: when the overpayment of a § 6166 installment is voluntarily made ( e.g., is the result of a mistake on the part of the taxpayer), it will be credited against outstanding installments under § 6403, but when the overpayment is both the result of erroneous or wrongful conduct on the part of the government and made under protest by the taxpayer, it will be refunded to the taxpayer in order to preserve the taxpayer's statutory right to defer payment under § 6166.

Ultimately, however, the Second Circuit did not reach this issue, finding that "regardless of whether § 6403 applies to involuntary overpayments, the Estate cannot be entitled to a refund unless there was an overpayment. . . ." Id. at 1016. The Estate of Shapiro court concluded that there was no overpayment, and no entitlement to a refund, because the IRS did not improperly refuse to allow the estate to reduce its installment payments to reflect certain deductions under the Tax Code. Id. at 1016-19.

Although not binding on this Court, these opinions illustrate the varied facts and competing policies arising in suits for tax refunds brought by § 6166 estate taxpayers. Notably, at the time the Gettysburg, Eichheim, and Snyder cases were decided, § 7422(j) had not been enacted, so that taxpayers involved in § 6166 disputes were required to pay estate taxes in full prior to seeking a refund. See Roski v. Comm'r, 128 T.C. 113, 119 (T.C. 2007). In addition to that difference, this Court is persuaded by the reasoning in Estate of Bell that legislation authorizing the IRS to credit overpayments does not conflict

with the overall purpose of § 6166. Also, just as the Ninth Circuit in Estate of Bell found that § 6403 did not carve out an exception for § 6166 taxpayers, 928 F.2d at 903, this Court finds no such exception in § 6402.

Moreover, the Court finds that the facts of this case are distinguishable from the facts in the three district court opinions in Gettysburg, Eichheim, and Snyder. First, the courts in those cases were concerned about the unfairness of refusing a refund to taxpayers whose overpayments resulted from the IRS's erroneous tax assessments and deferral determinations. See Gettysburg, 1992 WL 472022, at *10-11; Eichheim, 1988 WL 123832, at *3-4; Snyder, 630 F. Supp. at 184-85. Here, it appears from the record that the Estate erred in determining the initial estimated payment amount, as the Estate valued its assets, calculated the estimated payment amount to report on the Form 4768 extension request, and made the estimated payment. (See Pl's Mem. Supp. Mot. for Summ. J. at 3-4 [Doc. No. 17].) In any event, fairness issues aside, as Defendant notes, "nothing in the text of any statute permitted [the] courts [in Gettysburg, Eichheim, and Snyder] to limit the applicability of § 6402 . . . ." (Def.'s Opp'n Mem. at 17 [Doc. No. 26].)

In addition, as a factual matter, at the time the Estate made the December 2009 payment, it had neither properly applied for, nor been approved for § 6166 deferred tax treatment. While § 6166 confers a valuable right, as recognized by the Snyder court, 630 F. Supp. at 184-85, the tax enforcement objectives of § 6402 and are equally valuable. As the Sixth Circuit Court of Appeals noted in A.G. Reeves Steel Constr. Co. v. Weiss, 119

F.2d 472, 476 (6th Cir. 1941), statutory provisions concerning the IRS's authorization to credit over-assessments against under-assessments are "highly remedial with the obvious legislative intent to mitigate the burdens of taxpayers assessed with additional or deficiency taxes when such taxpayers have overpaid their taxes for other years and also to expedite and simplify settlements between the Government and its taxpayers."

Moreover, although the distinctions drawn by the Estate of Shapiro court appear in dicta, 111 F.3d at 1015-16, here, the Estate's December 8, 2009 payment was voluntarily made. Cases addressing whether tax payments are voluntary versus involuntary have defined an involuntary payment as "'one made pursuant to judicial action or some form of administrative seizure, like a levy.'" Tull v. United States, 69 F.3d 394, 397 (9th Cir. 1995) (quoting In re Tech. Knockout Graphics, Inc., 833 F.2d 797, 799 (9th Cir. 1987)); accord Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983). The payment at issue here was not made subject to any judicial action or administrative seizure. The Estate itself characterizes its payment as voluntary. (Pl.'s Mem. Supp. Mot. for Summ. J. at 12 [Doc. No. 17].) Therefore, to the extent that the dicta in Estate of Shapiro provides additional support for this Court's ruling and further distinguishes the instant facts from those in Gettysburg, Eichheim, and Snyder, 111 F.3d at 1015-16, the Court simply notes that the Estate's payment here was voluntary.

**D. Designation of Voluntary Payment**

Plaintiff argues that by designating its voluntary payment specifically as payment toward the non-deferred portion of its liability, the excess amount should be refunded, as

there was no additional obligation to pay the deferred tax liability at that time. (Pl.'s Mem. Supp. Mot. for Summ. J. at 11-14 [Doc. No. 17].)

Under the "voluntary payment rule," taxpayers who make voluntary payments may generally designate how they wish those funds to be applied to different liabilities if they submit specific, contemporaneous instructions for doing so with their payment. See, e.g., Tull, 69 F.3d at 396; United States v. Ryan, 64 F.3d 1516, 1522-23 (11th Cir. 1995); United States v. Lavi, No. 02-CV-6299 (SLT/JMA), 2004 WL 2482323, at *6 (E.D.N.Y. Sept. 23, 2004). In the Estate's December 8, 2009 cover letter, it indicated that the $2,494,088 payment was for the non-deferred portion of the estate tax. (Letter of 12/8/09 at 2, Ex. 4 to Walsten Aff.) Courts, however, have upheld the IRS's distinction between taxpayers' designations regarding partial voluntary payments of delinquent tax debts – which the IRS generally honors – and taxpayers' designations regarding voluntary overpayments – which are governed by §§ 6402 and 6403. See, e.g., Ryan, 64 F.3d at 1522-23; Lavi, 2004 WL 2482323, at *7. With respect to voluntary overpayments, §§ 6402 and 6403 authorize the IRS to credit overpayments to the taxpayers' liabilities. Ryan, 64 F.3d at 1522-23 (holding that bankruptcy debtors could not direct how overpayment, as opposed to partial payment of taxes, was to be applied); Lavi, 2004 WL 2482323, at *7 (finding that the taxpayer's right to designate payments does not extend to overpayments and the IRS's application of the overpayment to the taxpayer's tax liability falls within the IRS's authority to credit overpayments to any liability); Estate of Adell v. Comm'r, No. 24412-12L, 2014 WL 1978220, at *4-5 (T.C. May 15, 2014) (finding estate

not entitled to refund for overpayment because "[e]ven if the estate overpaid the nondeferrable portion [of its liability], it did not pay more than the full amount of estate tax due."). The plain language of § 6402 gives the IRS discretionary authority to credit tax overpayments to any tax liability. Northern States Power Co., 73 F.3d at 767; Georgeff v. United States, 67 Fed. Cl. 598, 608 (Fed. Cl. 2005). The same is likewise true of § 6403, which requires the IRS to credit any overpayment against the installment taxpayer's outstanding liability. Estate of Adell, 2014 WL 1978220, at *5. (holding,"under section 6403 the Commissioner must apply any overpayment of the nondeferrable portion before the Commissioner can credit or refund the overpayment to the taxpayer.") The "discretionary authority of the IRS supersedes any desires or wishes on the part of a taxpayer" to have their overpayment directed toward certain tax liabilities. Georgeff, 67 Fed. Cl. at 608. Here, the IRS was authorized to credit the Estate's overpayment to its outstanding tax liability under § 6402, and, to the extent that § 6403 otherwise applies, it was likewise authorized to credit the overpayment under § 6403, regardless of the Estate's requested designation.

To the extent that the Estate argues that its December 8, 2009 estimated non-deferred payment cannot be credited to its outstanding deferred installment payments because it had not yet been approved as a § 6166 taxpayer at the time it made the estimated payment, the Court disagrees. When Plaintiff overpaid the nondeferrable portion of its tax, albeit in error, it did not pay more than the full amount of estate tax due. See Estate of Adell, 2014 WL 1978220, at *5-6. There is no dispute that as of August 2,

2010, the IRS had assessed the Estate's deferred estate tax to be $ 8,613,651.59. (Letter of 8/2/10, Ex. 7 to Walsten Aff.) In Estate of Adell, where the estate made an overpayment of estate tax and eventually sought to terminate its § 6166 election, the court found that any such termination did not change the result. Id. at *5, n.4. The effect of termination of the § 6166 election "simply causes the deferred portion to be due immediately rather than at some later time." Id. Thus, "[a]ny overpayment of the nondeferrable portion must still be applied to the unpaid estate tax first even if payment is immediately due." Id. Similarly here, as of December 8, 2009, absent § 6166 deferred tax treatment and Plaintiff's request for an extension, the deferred portion of Plaintiff's tax would have been due as of that date. See id.; 26 U.S.C. § 6075(a) (requiring estate tax returns to be filed within nine months of the decedent's death). The IRS properly credited Plaintiff's overpayment to its outstanding tax liabilities.

**E. Refund Under 26 U.S.C. § 7422(j)**

To the extent that Plaintiff contends that § 7422(j) provides an independent basis for refund (Compl. ¶¶ 26, 28-31 [Doc. No. 1]), the Court disagrees. Section 7422(j) merely creates an exception for a particular category of taxpayers for purposes of jurisdiction. Section 7422(j)(3) provides that if a court redetermines the estate tax liability of an estate, no part of that liability which the court disallows may be collected by the IRS, and any amounts paid in excess of the amount determined by the court to be due are to be refunded. 26 U.S.C. 7422(j)(3). Because this Court is not asked to redetermine the correct amount of the Estate's liability – the amount is not at issue here

(Def.'s Admissions ¶ 9, Ex. 18 to Walsten Aff.) – this provision is inapplicable.

For all of the foregoing reasons, the Court finds no material issues of fact in dispute and grants the IRS's summary judgment motion. The Estate's motion is denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment [Doc. No. 16] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [Doc. No. 20] is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 12, 2014

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge